STATE of Minnesota, Appellant,

v.

Danny Lee DeROSE, Raymond Eugene
Pluff, James Michael Pluff,
Respondents.

No. C8–84–1955.

Court of Appeals of Minnesota.

April 2, 1985.

Hubert H. Humphrey, III, Atty. Gen.,
State of Minn., St. Paul, John K. Carlson,
Pine County Atty., Dave Spear, Asst. Coun-
ty Atty., Pine City, for appellant.

Kevin Hofstad, Pine City, for respondent
Danny Lee DeRose.

C. Paul Jones, State Public Defender,
Mark Anderson, Asst. Public Defender,
Minneapolis, for respondent Raymond Eu-
gene Pluff.

Patrick McGuire, Thomas Ryan, McGuire
Law Office, Rush City, for respondent
James Michael Pluff.

Before Heard, considered and decided by
POPOVICH, C.J., and NIERENGARTEN
and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Defendants were charged with burglary
in the second degree under Minn.Stat.
§ 609.582, subd. 2(d) (Supp.1983). The trial
court dismissed the criminal complaints

against defendants and suppressed all evidence resulting from a stop and search and seizure of the car defendants were riding in. The trial court did not make written or oral findings as required by Minn.R. Crim.P. 11.07. We reverse and remand.

## FACTS

At approximately 3:14 a.m. on April 30, 1984, Pine County Deputy Sheriff Brett Grinde responded to a silent burglar alarm from the Outdoorsman Sporting Goods store in Pine City. As he approached, he noticed a tan four-door Oldsmobile about one block away from the store. Deputy Grinde arrived at the store less than three minutes after the alarm, and the Oldsmobile was the only car in the area.

Grinde observed the car make a quick turn into a parking lot, change direction, and proceed west on Hillside Avenue. Grinde had observed the same Oldsmobile driving around Pine City about an hour and one-half before the alarm was set off. Only a few vehicles were driving around that evening and time because of bad weather. He recognized the car because its left taillight lens was broken and emitting a white light and because the car had "Stereo 101" bumper stickers under each taillight.

Deputy Grinde pursued the Oldsmobile on Hillside Avenue. The car accelerated to approximately 50 miles per hour. The posted speed limit was 40 miles per hour in this area. Officer Grinde then stopped the car.

Deputy Grinde approached the car and found four occupants. Grinde shined his flashlight into the car's interior and saw a flashlight between the two passengers in the back seat and that the passenger in the front seat was wearing handball gloves. The driver and occupants told Grinde they had pulled off the highway to nap and had been in Pine City 15 to 20 minutes. When Grinde asked for identification from the passengers, defendant Jerry Manos provided an identification card from Hennepin County Adult Correctional Facility. Manos said he had been incarcerated for DWI and receiving and concealing stolen property.

Deputy Grinde took the driver's keys and returned to the Outdoorsman with the driver, defendant Raymond Pluff. At the Outdoorsman, Grinde and another officer discovered the building's garage door was kicked in and that an interior door showed signs of being pried open. The interior door was the door which set off the burglar alarm.

Deputy Grinde learned there was an outstanding warrant for Raymond Pluff and decided to take all four suspects into custody. The car owner's brother, Jerry Manos, gave police permission to search the car. In the trunk, they found a crowbar, tire iron, and a large screw driver. The screwdriver appeared to match the pry marks found on the door of the Outdoorsman. After receiving a Miranda warning, defendant Danny DeRose gave a statement implicating all four men in the burglary of the Outdoorsman.

On July 13, 1984, an omnibus hearing was held to determine the lawfulness of Deputy Grinde's original stop of the car. The facts were stipulated, and written arguments were submitted. On October 30, 1984, the trial court issued an order without findings dismissing the complaints against defendants Danny DeRose, Raymond Pluff, and James Pluff and suppressing all evidence stemming from the stop and subsequent search and seizure.

## ISSUE

Were there specific and articulable facts justifying an investigatory stop of the car?

## ANALYSIS

1. The standard for determining the legality of an investigatory stop by police officers is contained in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

*Id.* at 21, 88 S.Ct. at 1880.

The threshold for justifying an investigatory stop of a motor vehicle in

order for an officer to carry out the duty of investigating suspected violations of the law is very low. *State v. Claussen,* 353 N.W.2d 688, 690 (Minn.Ct.App.1984).

It should be emphasized that the factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.

*State v. Johnson,* 257 N.W.2d 308, 309 (Minn.1977).

The reasonableness of a particular stop must be evaluated "in light of the particular circumstances." *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1880.

[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

*Id.* at 21–22, 88 S.Ct. at 1880; *see State v. DeSart,* 357 N.W.2d 416, 418 (Minn.Ct.App. 1984).

■ 2. Deputy Grinde was justified in stopping the car defendants were riding in. The alarm from the Outdoorsman gave Grinde reason to believe a burglary was committed. Grinde arrived at the scene almost immediately and observed only one vehicle in the area. The car appeared to take erratic and evasive action after seeing Deputy Grinde's patrol car. These specific facts were not "the product of mere whim, caprice, or idle curiosity." *Johnson,* 257 N.W.2d at 309.

The motor vehicle violations observed by Officer Grinde formed an independent basis justifying the stop of the car. The driver was violating the law by driving 50 miles per hour in a 40 mile per hour zone. *See* Minn.Stat. § 169.14, subds. 1, 5 (1984).

The driver was also violating the law by operating the car with a white taillight. *See* Minn.Stat. §§ 169.50, subd. 1, 169.57, subds. 1, 3 (1984).

Officer Grinde's failure to articulate these violations of law as a basis for stopping defendants is irrelevant under an objective standard. In a similar situation, the Minnesota Supreme Court stated:

[T]he fact that the officers did not think along these lines does not matter. This is because the issue is whether there was objective probable cause, not whether the officers subjectively felt that they had probable cause.

*State v. Speak,* 339 N.W.2d 741, 745 (Minn. 1983).

■ 3. Ordinarily, we would remand this matter because the trial court did not make written or oral findings as required by Minn.R.Crim.P. 11.07. We do not believe, however, that the trial court's order in this matter could be sustained on the facts.

### DECISION

The trial court erroneously concluded Officer Grinde's stop of the car violated defendants' constitutional rights. This matter is reversed and remanded for trial.

Reversed and remanded.