**STATE of Minnesota, Respondent,**

v.

**Richard Rex REAN, Appellant.**

No. C0–87–507.

Court of Appeals of Minnesota.

Dec. 15, 1987.

Petition for Review Granted; Cross-Petition Denied, Feb. 17, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Robert A. Stanich, Sp. Asst. Attys. Gen., St. Paul, Richard M. Arney, Washington Co. Atty., Stillwater, for respondent.

C. Paul Jones, Public Defender, Susan J. Andrews, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN,* JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This appeal is from a judgment of conviction for second degree burglary, Minn.Stat. § 609.582, subd. 2(d) (1986) (burglary with a tool). Appellant Richard Rex Rean was sentenced to 45 months, the presumptive guidelines sentence. We reverse and remand for a new trial.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

Appellant was charged with second degree burglary for a break-in occurring at Tartan High School in the early morning hours of May 26, 1986. Oakdale police officers Glen Miller and Michael Marx responded to a silent burglary alarm at 12:50 a.m., and found an open door on the outside of the building but all inside doors locked. They went outside, "secured" the building by observing all exits, and waited for 'the night engineer to arrive with the keys.

The keyholder, Eugene Priebe, arrived at 1:35 a.m. according to testimony at the omnibus hearing. Priebe and the police officers walked to the school offices, where they noticed a door ajar, with pry marks. They then heard footsteps running from the other side of the office and pursued but caught only a glimpse of a person running from the school in a westerly direction. A canine unit was called but found no trail. Officer Miller left the scene at 1:56 a.m. Officer Marx left at 2:05 a.m., but stayed in the area cruising the neighborhood.

After returning to the area about 2:50 a.m., Officer Miller drove south on Greenway Avenue, the street bordering the high school, with his headlights off. At the corner of 10th and Greenway, he saw the backup lights appear on a car parked in an apartment complex parking lot located within a block of the high school.

Miller noted there was considerable condensation and rain on the car. It had been raining heavily much of the night and the ground was very wet. Miller testified it had stopped raining shortly before 2:00 a.m. He passed the parking lot, and pulled into a nearby driveway. He noticed the car had only one occupant, and that the driver waited two minutes before backing out of his parking spot.

Miller watched as the car drove to the north end of the parking lot, where there was no exit, then drove back and out onto Greenway Avenue. The light above the car's rear license plate was out. Miller followed the car and stopped it when it turned eastbound on 10th Street. The car was being driven by appellant.

Appellant told Miller he had been in the apartment parking lot because he had been visiting his girlfriend who lived there. Miller ran a license check and discovered an outstanding Ramsey county bench warrant for appellant's arrest. When appellant stepped out of his car, Miller noticed his jacket front and the front of his jeans were soaked. Appellant was arrested when he declined to allow Officer Marx, who had just arrived, to check out his story with his girlfriend. The officers searched the car, finding a tire iron and two screwdrivers on the floor behind the front seats. Jewelry and other items identified as missing from the high school were discovered in a later search of the trunk.

Appellant represented himself at trial, with standby counsel from the public defender. Appellant stated at trial he wanted the opportunity to choose his own attorney, and was dissatisfied with the public defender.

Appellant presented the testimony of his girlfriend, Anita Hallis, to establish both an alibi defense and a defense that the crime was committed by another. Hallis testified appellant was asleep in her bedroom at 1:15 a.m. on May 26, when she received a phone call from Dan Greene, a person to whom she and appellant had loaned their car earlier in the day. She testified Greene told her he was too drunk to drive and appellant should hitchhike out to his location and pick up the car. She testified appellant then left their house on Goodhue Street in St. Paul on foot.

Appellant attempted to introduce through Hallis a notarized letter signed by Daniel Greene stating he had called appellant after borrowing his car and asked him to come and pick it up because he had been drinking too much to drive. Appellant also attempted to introduce statements allegedly made by Greene to Hallis admitting the offense. These statements were excluded, along with the notarized letter, on hearsay grounds.

The jury retired to deliberate at 11:39 a.m. At 5:33 p.m., they returned with the following request to review parts of the testimony:

We are now at an impasse and have reached no conclusion—guilty or not-guilty. Can we hear any of the testimony? Some of the members are interested in hearing-the girlfriend's testimony and the times of the phone call she received, her addresses—current and at the time of the alleged burglary. Many of us are questioning the time the police entered the building with the key-holder, and how long they searched before they reached the principal's office. We believe it was given in Officer Marx's testimony. *Can we hear that testimony?* It is important to know this because defendant said he received call at 1:15.

(Emphasis in original.)

The trial court rejected this request, sending a note stating the jurors would have to rely on their memory. The jury foreman replied "If this information is not available, what is our next step?" In response, the trial court reread the instructions. Appellant objected to rereading the instructions. The jury returned a guilty verdict at 7:44 p.m.

### ISSUES

1. Should this court strike the pro se supplemental brief?

2. Did the trial court err in determining the investigative stop of appellant's car was lawful?

3. Was appellant denied his right to counsel by the court's refusal to appoint counsel of appellant's choice?

4. Did the trial court abuse its discretion in declining to admit a notarized letter as evidence?

5. Did the court abuse its discretion in denying the jury's request to review testimony?

### ANALYSIS

1. *Supplemental brief*

■ Appellant has submitted a pro se supplemental brief consisting of the notarized letter of Daniel Greene which appellant attempted to introduce and appellant's argument on various issues. The state has moved to strike the brief because it includes material outside the record.

Minn.R.Crim.P. 28.02, subd. 8 states:

The record on appeal shall consist of the papers filed in the trial court, the *offered* exhibits * * *.

(Emphasis added.)

Appellant attempted to persuade the trial court to allow the Greene letter into evidence. Although it may not have been marked and formally offered as an exhibit, appellant was representing himself at trial, and the trial court made a ruling that the letter was excludable hearsay. The letter is a proper part of the record on appeal pursuant to Rule 28.02, subd. 8. The state's motion to strike the pro se supplemental brief is denied.

2. *Investigative stop*

Appellant contends the investigative stop of his car was not supported by a particularized and objective basis. *See Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 108 (Minn.1987). The trial court concluded the stop was justified both by the minor equipment violations and by a reasonable suspicion the car could be involved in the burglary.

■ Appellant contends the equipment violations were merely pretexts for the stop. The supreme court, however, has adopted the "objective approach" to determining whether articulable suspicion is present to justify the stop. *See State v. Pleas*, 329 N.W.2d 329, 332 (Minn.1983) (objective approach prevents fruitless exploration of minds of law enforcers). Despite Officer Miller's actual intentions, or his later testimony, the stop was justified by appellant's presence in the vicinity of the recently committed burglary and his actions while observed, as well as by the equipment violations. *See State v. DeRose*, 365 N.W.2d 284, 285–86 (Minn.Ct.App.1985) (investigative stop valid where the police office could cite both equipment violations and defendant's presence in the vicinity of a recent crime).

Appellant was observed within a block of the high school, and although over an hour had passed since the burglary, there were

very few persons about at that time of day in that area. *See Appelgate*, 402 N.W.2d at 108 (six-factor test governing validity of stop in vicinity of recent offense). Appellant's actions were similar to those observed in *Appelgate*, where the driver made prolonged stops at two intersections after the officer was certain the driver noticed him. *Id.* at 108. We agree with the trial court that there was an articulable suspicion justifying the stop of appellant's car.

### 3. *Right of Counsel*

■ A defendant does not have a right to appointed counsel of his choice. *State v. Carey*, 296 Minn. 214, 207 N.W.2d 529 (1973). Appellant was represented by two different public defenders at the various pre-trial stages. He has made no showing that his request for counsel of his own choosing was reasonable. Defense counsel's failure to submit the Greene letter to the court was not grounds for allowing appellant his choice of appointed counsel. Appellant's argument in his pro se brief that he was denied his right to represent himself is without merit.

### 4. *Notarized letter*

■ The notarized letter from Greene was plainly hearsay, contained no admissions so as to be against penal interest, and fit within none of the other exceptions to the hearsay rule. *See* Minn.R.Evid. 804(b)(3), (5) (catch-all exception). The trial court correctly refused its admission into evidence.

### 5. *Jury request to review testimony*

The trial court denied the jury's request to review specified portions of the testimony related to appellant's alibi defense. The jury made the request stating it was at an impasse after nearly six hours of deliberations. The trial itself, as it appears from the court minutes, lasted only four hours. After the trial court denied the request to review testimony and then reread the instructions, the jury deliberated approximately two hours before reaching its verdict.

Minn.R.Crim.P. 26.03, subd. 19(2) provides:

1. If the jury, after retiring for deliberation, requests a review of certain testimony * * *, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, *may* have the requested parts of the testimony read to the jury * * *.

2. The court need not submit evidence to the jury beyond that specifically requested by the jury, but in its discretion the court *may* also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

(Emphasis added.)

■ Whether to grant a jury's request for a reading of trial testimony is within the trial court's discretion. *State v. Spaulding*, 296 N.W.2d 870, 878 (Minn. 1980). A request need not be granted if it is unreasonable in the length of testimony requested or the number of witnesses involved. *See State v. Daniels*, 332 N.W.2d 172, 177 (Minn.1983) (court would have had to read testimony from five witnesses); *State v. Scott*, 277 N.W.2d 659, 660 (Minn. 1979) (court would have to read nearly half of total trial testimony); *cf. State v. Spaulding*, 296 N.W.2d at 878 (abuse of discretion to deny jury request for defendant's testimony, 35 pages out of 393 pages of testimony).

■ The jury here requested the testimony of Anita Hallis and a specific part of the testimony of Officer Marx. The request focused entirely on appellant's alibi defense —Hallis's testimony that appellant was in bed when the phone rang at 1:15 a.m., and police testimony referring to police estimates of when they entered the school and when they observed the burglar fleeing. Hallis's testimony was very brief, eight pages. Marx's testimony covered 20 pages, but he did not testify to the time he entered the school or the time the suspect fled. Officer Miller testified only to the time of the dispatch call, 12:50 a.m., and the time he left the building, 1:56 a.m.

Thus, the testimony did not, in fact, contain the specific times the jury sought. The trial court, however, stating "I do not

reread them parts of the testimony," did not examine the testimony requested or show an exercise of its discretion.

The jury's request for specified portions of testimony was a reasonable one, and although the reasonableness of the jury request does not restrict the court's discretion, it is "an important factor in the court's decision." *State v. Daniels*, 332 N.W.2d at 177. A categorical refusal such as was given by the trial court here, however, applies to all requests without distinction. Rule 26.03 does not anticipate that the danger of unduly emphasizing parts of the testimony is sufficient to justify a refusal, because the rule specifically provides for balancing the request with other unrequested testimony. Minn.R.Crim.P. 26.03, subd. 19(2)2. Nor does it appear that the burden of reading other testimony for balance would have made this jury's request unreasonable.

The *Spaulding* court, in remanding for a new trial, held that a blanket refusal to reread defendant's testimony, when the jury in making the request declared itself deadlocked following nine hours of deliberations, was an abuse of discretion. The circumstances here were similar. The trial court, as in *Spaulding*, did not exercise its discretion by weighing the request, but gave a categorical refusal. Although in *Spaulding* the court's refusal preceded any request by the jury, we believe the effect of that refusal to exercise any discretion was equally harmful in either case. Because the jury declared itself at an impasse without the testimony requested, there is an obvious concern that the trial court's refusal sent an implicit message to the jury, especially since a substantial portion of the requested testimony dealt with appellant's alibi defense.

We cannot say appellant's alibi defense presented a "close case," *Spaulding*, 296 N.W.2d at 878, because the credibility of the witnesses was for the jury to determine. *See State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980). The state's witnesses did not testify to times which would have ruled out the alibi defense, however,

and the denial of the request was plainly prejudicial to appellant.

## DECISION

Respondent's motion to strike appellant's pro se supplemental brief is denied. The trial court did not err in determining the investigative stop of appellant's automobile was lawful. The trial court did not abuse its discretion in not allowing appellant his choice of appointed counsel, or in excluding the notarized letter of Daniel Greene. The trial court abused its discretion in denying the jury's request to review parts of the trial testimony. We remand for a new trial.

Reversed and remanded.