**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Richard Rex REAN, Respondent.**

**No. C0–87–507.**

Supreme Court of Minnesota.

March 25, 1988.

Review Denied April 14, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Robert A. Stanich, Asst. Attys. Gen., St. Paul, Richard M.

Arney, Washington Co. Atty., Stillwater, for appellant.

C. Paul Jones, State Public Defender, Susan J. Andrews, Asst. Public Defender, St. Paul, for respondent.

Richard Rex Rean, pro se.

AMDAHL, Chief Justice.

The court of appeals granted defendant Richard Rex Rean a new trial on a charge that he burglarized Tartan High School in Oakdale. The court based the award of a new trial on the trial court's denial of a jury request for the rereading of certain testimony. *State v. Rean*, 416 N.W.2d 790, 794–95 (Minn.App.1987). We granted the state's petition for review. Disagreeing with the court of appeals' analysis, we reverse the award of a new trial and reinstate the judgment of conviction.

The state's evidence at trial established the following facts. At 12:50 a.m. on May 26, 1986, a rainy night, a number of Oakdale police officers responded to a call reporting that a silent alarm had gone off at Tartan High School. They conducted a perimeter search, then entered the building when the night engineer arrived and said that the tripped alarm was in the principal's office. As they entered the principal's office, they heard the burglar run out another door. An officer gave chase, but by the time he got outside the building the burglar was already 150 yards away. The officer could not tell whether the burglar was a man or a woman.

At 2:50 a.m., two hours after the officers first responded to the alarm, an officer who was cruising the area around the school with his car's lights off saw the backup lights come on on a car in an apartment parking lot just a block from the school. The officer also noted heavy condensation on the car's windows, indicating that the occupant had been in the car for some time. The car pulled out approximately 2 minutes after the officer first saw it. The officer stopped the car because of his suspicions and also for a technical equipment violation.

When the officer asked defendant, the driver, to explain his presence in the area, defendant said that his girl friend lived in the apartment building and that was where he had been. When the officer returned to defendant's car after talking briefly with someone on the police radio, the officer noted that the defendant had removed a black nylon jacket he was wearing when first stopped and that it was on the floor of the back seat. He also noted that defendant's hair and beard were very wet, that his pants were soaked from the knees down, that there were grass clippings stuck to defendant's boots and pants, that his jean jacket was wet in front but that the back of the jacket and the seat of his pants were dry. Asked which apartment his girl friend lived in so that an officer could verify his story, defendant said he would not say because he was married.

An inventory search of the car after defendant was arrested resulted in the discovery of (a) two screw drivers, some wet gloves, and a tire jack under the black nylon jacket on the floor of the rear seat and (b) a cloth bag in the trunk containing a number of items later positively identified as items taken in the burglary. A comparison of the blade part of the tire jack with pry marks left on the door of a large walk-in safe in the principal's office showed that the blade's rounded end fit perfectly in the indented areas left in the door.

Defendant has a long criminal record. The Sentencing Guidelines worksheet indicates that his criminal history score was six based on one custody status point, a 1963 robbery conviction, a 1980 attempted burglary conviction, and three burglary convictions, one in 1981, one in 1983, and one in 1984. If defendant had testified, the state could have used at least four of the prior convictions to impeach his credibility. Defendant did not testify but, as he has done before, acted as his own attorney. Although it is not proper for a pro se defendant to, in effect, testify in his opening and closing statements, in his questions of wit-

nesses and in his objections, and although defendant was warned by the trial court a number of times against doing this, he nonetheless was able to do it in this case, as he has done before. *See State v. Rean,* 353 N.W.2d 562, 564 (Minn.1984) (burglary case where defendant in his opening statement in effect gave alibi testimony).

In this case defendant called one witness, his girl friend, Anita Hallis. She testified that at the time of the burglary defendant was in their residence on Goodhue off of West Seventh. She was permitted to testify further, over objection by the prosecutor, that at 1:15 a.m.—*i.e.,* 25 minutes after the police were dispatched to the school—they received a call from one "Dan Green," who was using their car, saying that he had been drinking and could not drive and that defendant should hitchhike out and pick the car up, that the keys would be in it. She testified that she last saw defendant walking toward West Seventh and that she did not hear from him again until he called from jail. Defendant bolstered her testimony by eliciting from her testimony that she had no prior convictions. In his closing argument he talked about not being allowed to present certain evidence (the trial court gave a curative instruction on this improper statement), and he was able to say that he had maintained from the start that he had received a call from this Dan Green and that "I believe it was a quarter after one when we received the call from Dan, that was approximately 25 minutes after this burglary.")

The case was submitted to the jury at 11:39 a.m., just before lunch. Approximately 6 hours later the jury sent the court a note saying:

Many of us are questioning the time the police entered the building with the keyholder, and how long they searched before they reached the principal's office. We believe it was given in Officer Marx's testimony. *Can we hear that testimo-*

ny? It is important to know this because defendant said he received call at 1:15.

The trial court wrote on the back of the note, "You will have to rely on your memory of the testimony." The jury then sent another note saying:

We are now at an impass[e] and have reached no conclusion—guilty or not guilty. Can we hear any of the testimony? Some of the members are interested in hearing the girl friend's testimony and the times of the phone calls she received, her addresses—current and at the time of the alleged burglary. If the information is not available, what is our next step?

The trial court replied by writing on the note, "I can reread you the instructions."

The record is silent on whether the trial court consulted with the prosecutor and defendant before replying to the notes. However, the trial court did go on the record at 5:32 p.m., when the jury formally asked for a rereading of the instructions. Defendant objected on the record to the rereading of the instructions. Responding to the objection, the trial court explained to defendant, "I do not reread the parts of the testimony only because that emphasizes that part of the testimony over other parts of the testimony and they do have to rely on their memory on that. I do, however, reread them the instructions." This arguably suggests that defendant was aware of the trial court's ruling regarding the requests for rereading of testimony. The trial court reread the entire instructions starting at 5:34 p.m.[1] At 7:44 p.m. the jurors returned with the guilty verdict.

The court of appeals held (a) that the requests for rereading of the testimony were reasonable, (b) that the trial court's refusal was a categorical one applying to all requests without distinction, (c) that the trial court's refusal may have sent an "im-

---

1. The rereading of the instructions is not an issue in this appeal. However, we nonetheless note that Minn.R.Crim.P. 26.03, subd. 18(4) provides that "[t]he instructions may be in writing and in the discretion of the court a copy may be taken to the jury room when the jury retires for

deliberation." By allowing the jury to take a copy of the instructions to the jury room when the jury retires for deliberation, the trial court can reduce the likelihood that the jury will request the rereading of the instructions.

plicit message to the jury," and (d) that although the defense testimony did not present a "close case," the error in refusing to reread testimony was nonetheless "plainly prejudicial" because the testimony of the state's witnesses did not "rule out" the alibi defense. 416 N.W.2d at 794–95.

Minn.R.Crim.P. 26.03, subd. 19(2), which deals with jury requests to review evidence, provides:

> 1. If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested materials admitted into evidence.
>
> 2. The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

The leading Minnesota cases dealing with jury requests to review evidence are *State v. McMorris*, 373 N.W.2d 593 (Minn.1985) (reversing an award of new trial by court of appeals; dealing with issues of failure to object and of whether error in denying or granting a jury request is prejudicial); *State v. Daniels*, 332 N.W.2d 172 (Minn. 1983) (analyzing in detail what is the scope of the trial court's considerable discretion in handling such requests and also analyzing issue of when error is prejudicial); *State v. Spaulding*, 296 N.W.2d 870 (Minn. 1980) (the rare "close case" where trial court's refusal to reread testimony was so prejudicial and so plainly erroneous under the circumstances that defendant's failure to object did not prevent us from awarding the defendant a new trial).

Relying on these and other cases, we substitute the following analysis for that of the court of appeals:

(1) Upon receiving the notes the trial court should have discussed the requests with the prosecutor and with defendant in chambers, then should have met with the jury in open court. *State v. Richardson*, 332 N.W.2d 912 (Minn.1983). We cannot tell from the transcript whether the trial court discussed the matter with the prosecutor and with defendant in chambers; the trial court's on-the-record explanation to defendant when the court was granting the request to reread the instructions suggests that maybe the trial court did discuss with defendant the requests for the rereading of testimony. It appears that the trial court did not meet with the jury in open court to respond to the jury's requests for the rereading of testimony.

■ (2) If the trial court did discuss the matter with defendant in chambers, then the failure of defendant to object on the record ordinarily should constitute a forfeiture of his right to have the issue of the trial court's handling of the matter decided on appeal. *State v. McMorris*, 373 N.W.2d 593 (Minn.1985). The forfeiture rule applies equally to a criminal defendant who rejects representation by the public defender and represents himself.

■ (3) Our decision in *State v. Daniels*, 332 N.W.2d 172 (Minn.1983), discusses the scope of the trial court's discretion in detail. Here the trial court's statement ("I do not reread the parts of the testimony") arguably suggests that the trial court may have been improperly following some sort of blanket rule against granting jury requests for the rereading of testimony. Even so, if there were objective grounds for denying the requests in this case, then the trial court's decision cannot be said to be erroneous, since the trial court could have denied the requests even if it had not had a blanket rule. We conclude that there were objective grounds for denying the requests. Simply because the jury apparently felt that it was at an impasse did not mean that the trial court was obligated to grant the jury's requests, as the court of appeals' opinion seems to say. The first request, in effect, was a request for testimony that did not exist. The second request was equally unreasonable: the girl friend was the last witness to testify; she

clearly said that the call was received at 1:15 a.m., and the jury's first request suggests that the jury knew that that is what the testimony was. The current address of the girl friend was totally irrelevant; repetition of her testimony that her address at the time of the offense was West Seventh in St. Paul would not have helped the jury decide the case properly. Granting the requests might have helped the jury decide the case illogically, but that is not the test of whether a request is reasonable. In any event, the fact that a request is reasonable does not necessarily mean that the trial court has no discretion to deny the request. *State v. Daniels*, 332 N.W.2d 172 (Minn. 1983). While criticizing the trial court's apparently wooden approach, the court of appeals in effect offers in its stead the wooden approach of always granting a request, even an unreasonable one, if the jury says it is at an impasse.

■ (4) We also reject the court of appeals' conclusion that any error in denying the requests was prejudicial. Defendant was literally caught red-handed in possession of burglary tools and the stolen property just a block from the burgled building 2 hours after the burglary. It is obvious from his condition that he had been secreting himself in the rain, waiting for the police to clear out of the area, then had made his way to the car. The fact that the car windows were fogged up suggests that defendant had waited in the car for a period of time also. The fact that he gave an obviously false statement to the police after he was stopped is also very damning. Most damning of all is the evidence that when the officer went back to the squad car, defendant took off his black nylon coat and threw it over the burglary tools on the floor of the back seat. Our cases dealing with prejudicial error in this context are summarized in *State v. McMorris*, 373 N.W.2d 593 (Minn.1985). The case on which the court of appeals relied in much of its analysis, *State v. Spaulding*, 296 N.W.2d 870 (Minn.1980), is easily distinguishable on this point in that we expressly described that case as a "close case." Here the state's evidence of defendant's guilt was very strong. That the jury took

a relatively long time in deciding the case does not mean it was a "close case" on the merits; juries often take a long time deciding cases when the evidence of guilt is strong. While conceding that this was not a "close case," the court of appeals said that any error in denying the requests was "plainly prejudicial" because the repetition of the testimony would have shown that the state's evidence bearing on the issue of time did not rule out the alibi defense. 416 N.W.2d at 795. The trouble with this is that, in the context of all of the damning evidence of defendant's guilt, the alibi defense was simply not worthy of belief by a reasonable jury. The court of appeals' statement suggests that it based its determination of prejudice on its assessment of the *possible* impact of any error, not on the *likely* impact of the error on a *reasonable* jury. Given the strength of the evidence of guilt and all of the other factors, we conclude that the court of appeals' conclusion that any error was prejudicial is wrong.

Reversed and judgment of conviction reinstated.