STATE v. MICHAEL EDWARD CAREY.

207 N. W. 2d 529.

May 18, 1973—No. 43226.

*C. Paul Jones,* State Public Defender, and *Fred Morrison,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Todd, JJ.

PETERSON, JUSTICE.

Defendant was, by jury verdict, found guilty of simple robbery, Minn. St. 609.24, and has appealed from the judgment of conviction and from the order denying his motion for a new trial. He was sentenced to imprisonment for a period not to exceed 10 years on February 12, 1971. On September 15, 1972, he was released on parole.

The issue on appeal is not whether the evidence of record was sufficient to sustain the jury's verdict for, as a result of effective police work, defendant was promptly apprehended with the physical evidence of the robbery, followed immediately by the positive eyewitness identification by his victim. Defendant, however, contends (1) that the physical evidence should have been suppressed as the product of a constitutionally impermissible search of his automobile and (2) that the on-the-scene identification by his victim should have been excluded because made without the presence of counsel on his behalf. He contends, in addition, (3) that he was denied competent counsel at his trial when, following the pretrial Rasmussen hearing, he dismissed appointed counsel and chose to conduct his own defense unless other counsel was appointed.

1. The salient facts concerning the reported robbery and the prompt apprehension of defendant in the vicinity of the crime establish that the seizure of physical evidence from the trunk and driver's seat of defendant's automobile was the product of a constitutionally permissible warrantless search incident to a lawful arrest, which the arresting officers had probable cause to make.

A "Li'l General" food store in St. Paul was robbed on the night of November 22, 1970, by a lone male concealing one hand in his pocket as if he were holding a handgun. The robber first approached Ronald Winkel, a part-time employee. It was a full-time employee, Amy Lilleboe, however, who placed in a paper sack the contents of the cash register, including several 1-dollar bills, a number of 50-cent food stamps, and a handful of quarters, which the robber took. And it was she who made a conscious effort to identify the robber since she recalled having seen him patronize the store on prior occasions.

The police were called immediately after the robber's departure, and Police Sergeant Andrew Kisch arrived at the store within about 2 minutes. At that time, Mrs. Lilleboe described the robber to Officer Kisch as a white male, approximately 6 feet

tall, of medium build, with sandy brown or sandy blond hair, and about 30 to 35 years old. She reported that he was dressed in a blue hooded sweatshirt and wore a nylon stocking over his head. She testified that she had been able to get a good look at the robber's face because the lighting was good and the nylon stocking fit loosely over his face without distorting his features. She recognized him as a person who had been a customer in the store on several occasions prior to the robbery.[1]

Officer Kisch, upon leaving the Li'l General store, drove his police vehicle in the direction of a housing project about a block to the north of the store, the direction in which the robber reportedly had fled on foot. At a point approximately 2 blocks from the store he spotted an automobile emerge from a side street and proceed in a direction away from the store. Kisch noticed that the trunk lid was not fully closed. He also observed that the windows were fogged with moisture which led him to believe that, since the weather was chilly, the car had only recently been started. As the officer drove up behind that automobile, its driver, the defendant, pulled to the curb without any signal from the officer. Kisch stopped behind the automobile, and as he approached defendant, he observed that defendant answered Mrs. Lilleboe's physical description of the robber. Moments later Officer Kisch was joined by Officer Arthur Mathison, who stopped his police vehicle across the street from defendant's automobile. While keeping defendant under surveillance, Mathison observed under the partially open trunk lid what appeared to be an article of blue clothing in the trunk of defendant's automobile. He opened the trunk lid fully and discovered that it was a blue hooded sweatshirt.

---

[1] The part-time employee, Ronald Winkel, was less specific in identification and stated that although defendant looked like the robber he "wasn't positively sure." However, he confirmed that the robber was wearing a blue hooded sweatshirt and a nylon stocking over his head. He thought the robber was about 6 feet tall and weighed about 175 to 185 pounds.

Defendant was not placed under arrest until shortly after the arrival of Officer Mathison. It is not clear whether defendant was expressly told that he was under arrest before or after the trunk lid was fully opened. However, it is sufficiently clear under the circumstances that probable cause for the arrest plainly existed even before the object was determined to be a blue hooded sweatshirt. The close relationship between time and place of the arrest and of the robbery, the physical similarity of the suspect to the description given by the robber's victims, and the plain-sight view of a blue garment of some sort in the partially open trunk provided sufficient probable cause for the arrest.

What constitutes probable cause for arrest was defined in State v. Sorenson, 270 Minn. 186, 196, 134 N. W. 2d 115, 122 (1965), as a "reasonable ground of suspicion supported by cir-cumstances sufficiently strong in themselves to warrant a cau-tious man in believing the accused to be guilty." As we have re-peatedly stated this is a practical and nontechnical determination based upon the peculiar facts of each case as they appear at the time to an experienced police officer. State v. Sorenson, *supra*; State v. Clifford, 273 Minn. 249, 252, 141 N. W. 2d 124, 126 (1966); State v. Harris, 265 Minn. 260, 264, 121 N. W. 2d 327, 331, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. 2d 94 (1963); State v. Cox, 294 Minn. 252, 256, 200 N. W. 2d 305, 308 (1972).

It is undisputable that a complete search of the trunk and the front seat of defendant's automobile, which produced evidence even more incriminating than the blue sweatshirt, occurred only after he was expressly placed under arrest. The search disclosed a toy gun wrapped with tape in the trunk (apparently used by defendant to simulate a real handgun) and, in the front seat, nylon stockings and a paper bag containing money and food stamps in the same denominations and number as were taken from the cash register of the Li'l General store. A search of an automobile incident to a lawful arrest, of course, may constitu-tionally be made without a warrant. Chambers v. Maroney, 399

U. S. 42, 48, 90 S. Ct. 1975, 1979, 26 L. ed. 2d 419, 426 (1970).

2. The facts concerning the eyewitness identification of defendant by Mrs. Lilleboe are simply stated. Officers Kisch and Mathison took defendant back to the store after completing the search of his automobile. They told Mrs. Lilleboe simply that "we had apprehended a person that we felt was a suspect." Standing outside the store at a distance of 10 or 20 feet from the police vehicle in which defendant was seated, she positively identified defendant as the robber. The dome light was on, and its light was adequate for her to see defendant clearly. The reliability of her identification was strengthened by the accuracy with which she had previously described his physical characteristics before his apprehension.

We perceive no merit in the claim that the on-the-scene identification was impermissible without the presence of counsel. The manner in which defendant was presented for identification was not unduly suggestive or otherwise unfair. From the standpoint of a suspect, it is in his interest to have an immediate confrontation with the alleged victim, whose observation may serve promptly to exonerate him as much as to implicate him, and that procedure avoids the embarrassment and inconvenience of being booked at the police station pending the more formal procedures of a lineup. And, of course, an identification, or nonidentification, by an alleged victim while the matter is fresh and free of other influences is in the public interest of efficient law enforcement. To require delay until the appointment or arrival of defense counsel would effectively preclude any on-the-scene identification.[2] The Wade and Gilbert rules[3] mandating the presence of counsel at the police lineup

---

[2] Similar views were expressed by Judge (now Chief Justice of the United States) Burger in Bates v. United States, 132 App. D. C. 36, 405 F. 2d 1104 (1968).

[3] United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967); and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967).

identification procedures relate only to confrontations following indictment or other formal charges, Kirby v. Illinois, 406 U. S. 682, 92 S. Ct. 1877, 32 L. ed. 2d 411 (1972), and accordingly afford no authority for a different disposition of this issue.

3. Shortly prior to commencement of trial, but immediately after the pretrial Rasmussen hearing at which the court denied defendant's motion to suppress the on-the-scene identification evidence and the physical evidence seized incident to arrest, defendant made an in-court dismissal of his appointed counsel and requested substitution of other appointed counsel.[4] The court denied the request for appointment of new counsel, but advised defendant that counsel would be directed to remain in an advisory capacity. Defendant, however, stated that he did not want that counsel present under any circumstances and would conduct no defense if counsel was allowed to remain in an advisory capacity. The trial thereupon proceeded for 3 days without presence

---

[4] The basis for this request appears in the following colloquy between the court and defendant:

"DEFENDANT CAREY: Yes, Your Honor, I would like to dismiss Mr. Dowdal as my counsel.

"THE COURT: Why is that, sir?

"DEFENDANT CAREY: I don't feel that the Rasmussen was handled fairly, the cross-examination to me was inadequate. I just don't think that the job was done as I am entitled.

"THE COURT: What are you entitled to?

"DEFENDANT CAREY: Fairness.

"THE COURT: The Court has had a great deal of experience in this area and it seems to me that the cross-examination was very lengthy and very extensive to all of the areas.

"DEFENDANT CAREY: Yes, Your Honor, in trivia.

"THE COURT: Merely because the Court gives an unfavorable ruling the Court cannot discharge your attorney.

"DEFENDANT CAREY: Also in my talking to him and discussing the forthcoming trial, as I put it to him, Your Honor, I'm an Irishman and when I put on the gloves to fight, I fight, and it doesn't seem to me that he's going to take my case wholeheartedly and fight in there for me."

of counsel and with defendant conducting his own defense. Upon conclusion of his defense, however, defendant requested that counsel be appointed to assist him "on some of the finer points brought up in the testimony." This late-stage request was denied.

The role of a trial judge in conducting a fair and ordered trial with justice to the accused and to society is severely tested by the kind of demand made by this defendant. Whatever standards may be written as an aid to the judge,[5] in the exercise of his discretion, each case presents its own unique circumstances. The trial judge here acted in conformity with our own declaration in State v. Fagerstrom, 286 Minn. 295, 299, 176 N. W. 2d 261, 264 (1970):

"* * * [T]he right of an indigent to have counsel does not give him the unbridled right to be represented by counsel of his own choosing. The court is obligated to furnish an indigent with

---

[5] In the A. B. A. Standards for Criminal Justice, The Function of the Trial Judge, §§ 6.6, 6.7 (Approved Draft, 1972), these relevant recommendations are made:

"The defendant's election to represent himself at trial.

"A defendant should be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that he

(i) has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(ii) possesses the intelligence and capacity to appreciate the consequences of this decision; and

(iii) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.

"Standby counsel for defendant representing himself.

"When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his own motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants."

a capable attorney, but he must accept the court's appointee. Although he may ask for a substitution, his request will be granted only if exceptional circumstances exist and the demand seems reasonable."

Defendant's demand for substitution of appointed counsel was plainly unreasonable; there were no exceptional circumstances to justify it. Notwithstanding defendant's feeling that his counsel would not "fight in there for me," an examination of the transcript demonstrates that the representation on his behalf was competent. The time of the request, moreover, was such that the granting of it would impose a delay in the commencement of the trial. Of course, granting the request for counsel at the point of final argument would have been useless without at least a continuance in the trial to permit an appointed counsel to procure and study a transcript of the evidence preparatory to making, or assisting the defendant in making, a summation to the jury. Defendant, a person of obvious intelligence, was admittedly no stranger to criminal trials, and he conducted the examination and cross-examination of witnesses with considerable clarity and perception. The most critical stage in this trial was the pretrial proceeding in which he *was* represented by counsel for defendant's only practical defense depended upon suppression of the strong evidence against him.

Affirmed.