**STATE of Minnesota, Respondent,**

v.

**Jan P. REED, Appellant.**

**No. C1–86–599.**

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied Feb. 13, 1987.

Hubert H. Humphrey, III, State Atty. Gen., Tom Foley, Co. Atty., Steven C. De-Coster, Asst. Co. Atty., St. Paul, for respondent.

Larry E. Reed, Hassan & Reed, Ltd., Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment of conviction for assault and terroristic threats. Appellant Jan Reed raises a number of issues concerning pretrial and trial proceedings. We affirm.

## FACTS

Appellant Reed was convicted by a jury of assault and terroristic threats for pulling a loaded gun on a fellow bus passenger on July 7, 1985. Reed admitted possessing the weapon, which he pulled from a large shopping bag at his feet, and pointing it at Timothy Herme. Herme had challenged Reed after his confrontation with another passenger. At trial, Reed claimed he had acted in self-defense. The jury acquitted Reed of assaulting a friend of Herme, who was standing behind Herme.

The incident occurred on a bus traveling on University Avenue to the Taste of Minnesota festival. The weather was hot and the bus was crowded and noisy. Reed had two disagreements with other passengers, the last with a young black man who took a seat Reed thought should be his. Herme intervened, stating, according to Reed, "Don't mess with my cousin." Reed claimed that Herme, who is white, was attempting to start a fight. He testified that Herme gestured with his hand in Reed's face before Reed pulled the weapon.

The State moved for an examination of mental competence, based on evidence in the file that Reed had been diagnosed as paranoid schizophrenic. The court granted this motion and ordered an examination of Reed's competence to stand trial and mental condition at the time of the offense. The court did not order an examination of Reed's competence to make a knowing and intelligent waiver of his right to counsel.

The public defender was appointed to represent Reed. Sometime after the Rule 20 motion, Reed objected to the assistant public defender chosen to represent him. Just before trial, Reed requested that a different attorney be assigned to represent him.

The trial court denied Reed's request to change lawyers and gave him a choice of whether to accept the assigned counsel or to represent himself. The court told Reed that if he chose to proceed pro se, assigned counsel would remain in court to advise him as standby counsel. Although Reed chose to proceed pro se, his assigned counsel remained in court, and Reed consulted frequently with him throughout the trial. The court then questioned Reed as to his education, awareness of the maximum possible penalties and possibility of plea bargaining, and as to available defenses.

In voir dire, Reed attempted to probe the feelings of prospective jurors toward possession of firearms. The court at first allowed the inquiry, later limiting Reed to asking whether the prospective jurors had any feelings against firearms which would prevent them from being impartial.

On cross-examination, the court sustained objections that questions as to Herme's distance from Reed and the noise level on the bus were repetitious. Earlier on cross-examination, Herme testified he was 10 to 15 feet from Reed, could not hear Reed's conversation with another passenger but "observed [his] disagreement," and heard the passenger tell Reed to get away from him. On direct, Herme testified the noise level was such that you could have a conversation "between two people next to each other."

Reed claims a number of statements in the prosecutor's closing argument were prejudicial misconduct.

## ISSUES

1. Was appellant deprived of his constitutional right to counsel?

2. Did the trial court err in failing to conduct a Rule 20 hearing on appellant's competence to stand trial, or a hearing on his competence to waive counsel?

3. Did the court err in limiting appellant's voir dire examination?

4. Did the trial court's limitation of cross-examination deny appellant the right of confrontation?

5. Did the prosecutor commit prejudicial misconduct?

## ANALYSIS

*1. Right to Counsel*

A defendant does not have the right to obtain court-appointed counsel of his choice. *State ex rel. May v. Swenson*, 242 Minn. 570, 572, 65 N.W.2d 657, 659 (1954). Although he may ask for a substitution, his request will be granted only if exceptional circumstances exist and the demand seems reasonable. *State v. Carey*, 296 Minn. 214, 222, 207 N.W.2d 529, 533 (1973). Here, Reed moved to substitute counsel a week before trial and there were no exceptional circumstances to justify it. The court may deny last-minute requests for substitute counsel that inevitably delay trial. *Id.*

*2. Mental Competency*

Two issues of mental competence arise where the defendant represents himself. The supreme court in *State v. Bauer*, 310 Minn. 103, 245 N.W.2d 848 (1976), distinguished competency to stand trial from competency to make a knowing and intelligent waiver of the right to assistance of counsel.

The trial court is required to hold a hearing on the defendant's competency to stand

trial only if a party files a written objection to the Rule 20 report. Minn.R.Crim.P. 20.-01, subd. 3. Since neither party objected, the trial court decided Reed's competence to stand trial based on the examination report.

■ *Bauer* requires "further hearings or inquiries" into the competence to waive assistance of counsel. 310 Minn. at 123, 245 N.W.2d at 859. Inquiry should focus on whether the defendant has been advised of his right to counsel, his intelligence and capacity to recognize the consequence of his decision, and his comprehension of the nature of the charges, the range of possible punishments, and any additional facts essential to a broad understanding of his case. *Id.* at 125, 245 N.W.2d at 860.

■ The court here questioned Reed on his educational background, advised him of his right to counsel, and elicited his understanding of the maximum penalty, the possible advantage of plea bargaining, and the appropriate defenses. This inquiry satisfied the requirements of *Bauer.* The trial court did not abuse its discretion in allowing Reed to represent himself.

Reed consulted frequently with his public defender. He also understood that his best defense was self-defense. *Cf. Bauer,* 310 Minn. at 124–25, 245 N.W.2d at 860 (pro se defendant's justification, government harassment, was not a legal defense). He presented that defense adequately, through coherent testimony and appropriate questions on cross-examination, with the assistance of standby counsel.

### 3. *Limitation of Voir Dire*

■ The trial court limited Reed to questioning prospective jurors on those feelings toward firearms which might prevent them from being impartial. Broader questioning on any negative feelings toward firearms might have aided Reed in exercising his peremptory challenges. Reed, however, has failed to show prejudice resulting from this limitation on voir dire. *See United States v. Benson,* 760 F.2d 862, 864 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106

S.Ct. 166, 88 L.Ed.2d 137. Reed used his peremptory challenges effectively. Exclusion of jurors with feelings on firearms possession was not manifestly more important than exclusion of jurors who had been assaulted, or who had had difficulties with racial minorities. A number of prospective jurors were excluded who did have feelings on firearms which could have affected their impartiality.

### 4. *Cross-examination*

■ Reed claims he was deprived of the right to confrontation by the trial court's limiting of his cross-examination of Herme. Reed was attempting to show that Herme, by his own description of the noise level on the bus, could not have heard Reed's conversation with the other passenger. Although Reed's questioning was not repetitious, the apparent contradiction was revealed earlier in Herme's own answers on cross-examination, when Reed had an opportunity to explore it. It was not prejudicial error to fail to give Reed another opportunity to explore any discrepancy. *See e.g. State v. Jones,* 381 N.W.2d 44, 47 (Minn.Ct.App.1986) (defendant's cross-examination of victim fully tested both her recollection and her credibility).

### 5. *Prosecutorial Misconduct*

■ Reed claims a number of the prosecutor's comments in closing argument were prejudicial misconduct. The general rule that a party must object to such statements or waive the issue does not apply to a criminal defendant appearing pro se. *State v. Stufflebean,* 329 N.W.2d 314, 318 (Minn.1983).

■ Prefacing argument on various issues with "the state submits" did not inject the personal opinion of the prosecutor or that of the State. *Cf. State v. Prettyman,* 293 Minn. 493, 495, 198 N.W.2d 156, 158 (1972) (impermissible for prosecutor to begin "I think").

■ We need not decide whether the prosecutor misstated the law in her closing argument when she asserted "self-defense

does not apply to terroristic threats." *But see State v. Hass*, 268 N.W.2d 456, 461 (N.D.1978) (self-defense was an appropriate defense to a charge of terrorizing). The trial court instructed the jury that the defendant is not guilty of "a crime" if he acted in self-defense. Moreover, the verdict showed the jury rejected the claim of self-defense for the assault charge as well.

The closing misstated Reed's testimony when it asserted that he admitted drawing and pulling the gun with the purpose of intimidating the victims. However, Reed suggested no other reason for pulling the gun, and the jury could infer no other purpose. The issue was whether Reed had justification for the intimidating act.

### DECISION

Appellant was not deprived of his right to counsel. The trial court did not err in its inquiry into appellant's competency. There were no prejudicial errors at trial and the prosecutor did not commit prejudicial misconduct.

Affirmed.