STATE of Minnesota, Respondent,

v.

William Arthur ANDERSON, Appellant.

No. A05–1167.

Court of Appeals of Minnesota.

Sept. 12, 2006.

John J. Muhar, Itasca County Attorney, Grand Rapids, MN, and Mike Hatch, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, G. Tony Atwal, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, ROSS, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

Appellant challenges his conviction of possession of a firearm by an ineligible person, arguing that (1) he was not subject to the firearm restriction because his felony burglary conviction was deemed to be a misdemeanor after he completed probation; (2) the district court erred in concluding that the search of his home under a condition of his probation not imposed by the sentencing court itself, was lawful; and (3) the prosecutor committed prejudicial misconduct in closing argument by injecting his personal opinion and vouching for the credibility of witnesses. We affirm.

## FACTS

Appellant William Arthur Anderson was on probation while he lived with his girlfriend Tina Ruschmeyer; his son Tanner Anderson; and Tanner's girlfriend, Amy Lane. Appellant's criminal history leading up to his probation is as follows. In 1996, appellant pleaded guilty to second-degree burglary. The district court stayed imposition of the sentence and placed appellant on probation for the offense. In 2001, upon successful completion of his probation, the district court discharged appellant from probation and ordered that his felony conviction would be deemed a misdemeanor under Minn.Stat. § 609.13, subd. 1(2) (2000).

In 2003, appellant pleaded guilty to, inter alia, a fifth-degree controlled substance crime, for which he was again placed on probation. At the sentencing hearing, the district court ordered probation but did not discuss the terms of the probation agreement. The probation agreement signed by appellant, effective until 2008, required that he remain law abiding and obtain permission before leaving the state, and prohibited appellant from owning, using, or possessing a firearm or using or possessing controlled substances. The agreement also provided that "[appellant] shall, when ordered by [his probation] Agent, submit to search of [his] ... residence or any other property under [his] control."

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

In September 2004, Ruschmeyer phoned her mother, Irene Steel, to report that appellant had guns, that appellant had threatened her the previous day, and that appellant has been arrested in Superior, Wisconsin. Steel, in turn, called Itasca County Sheriff Investigator Greg Snyder and told him that appellant had been arrested in Superior and had posted bail. Snyder contacted the Superior Police Department and confirmed that appellant had been arrested and charged with domestic assault against Ruschmeyer the previous day. Snyder phoned appellant's probation officer, Anthony Athmann, and left a message telling him what he had learned regarding appellant.

That same day, a woman claiming to be the mother of appellant's girlfriend phoned Athmann, and told him that appellant had assaulted Ruschmeyer while in a Superior hotel room. The caller, later identified as Steel, reported that Ruschmeyer had told her that appellant kept guns and a large amount of drugs in his home, that the guns were located under his bed, and that there was methamphetamine in a secret compartment behind appellant's dryer. Athmann called appellant to discuss the Superior incident but was unable to reach him.

Later that evening, Athmann, Snyder, and another deputy drove to appellant's house; the officers did not have a warrant to search the house. Outside appellant's house, they met appellant's son, Tanner Anderson, who let them in.

Once inside, Athmann introduced himself to appellant, and told him that he was there to conduct a search for firearms "as explained ... in his conditions for probation." Appellant replied, "that's fine. I've got nothing to hide." Athmann asked appellant where his bedroom was, and appellant pointed him to his bedroom. Inside the bedroom, the officers lifted appellant's mattress and found two firearms, a .22

semi-automatic rifle and a .20 gauge shotgun, in a compartment at the base of the bed. Appellant denied knowledge of the guns in the bedroom and said to Tanner, "I thought your mother got all your guns out of here." No drugs were found in the home.

Appellant was charged with possession of a firearm by an ineligible person in violation of Minn.Stat. § 609.165, subd. 1b (2004). Appellant pleaded not guilty to the charge and filed a pre-trial motion to suppress the firearm evidence, arguing that it was obtained as the result of an illegal warrantless search. Following an omnibus hearing, the district court denied the motion, determining that the warrantless search was reasonable and did not violate the Fourth Amendment because appellant's probation agreement provided that he submit to searches of his home and the police had reasonable suspicion to believe appellant had violated the agreement.

At trial, the parties disputed the ownership and possession of the guns. Ruschmeyer testified that, before his arrest, appellant had handed the shotgun found under appellant's bed to her and told her to place it in the compartment under his bed. Ruschmeyer testified that she saw a second gun in the compartment. Amy Lane testified that the guns were brought to appellant's home for Tanner Anderson to use for hunting. David Estey, a friend of appellant's, testified that he saw two guns in appellant's bedroom while visiting the home and offered to take the guns because appellant was prohibited from possessing firearms, but that Ruschmeyer told him that Tanner was still hunting with guns and that she would take care of them.

Following a jury trial, appellant was found guilty of possession of a firearm by an ineligible person. This appeal follows.

## ISSUES

I. Was appellant properly convicted of possession of a firearm by an ineligible person even though his prior felony burglary conviction was later deemed a misdemeanor?

II. Did the district court err in refusing to suppress the evidence of guns found in appellant's residence during the course of a warrantless search?

III. Did the prosecutor commit misconduct that denied appellant the right to a fair trial?

## ANALYSIS

### I.

■ Appellant contends that he was improperly convicted of possession of a firearm by an ineligible person because his prior burglary conviction was deemed a misdemeanor after he completed probation, and a misdemeanor is not a "crime of violence" mandating imposition of a firearms restriction. As a threshold ·matter, the state argues that appellant's argument is waived because it was not raised before the district court. This court will generally not consider matters not argued and considered in the court below. *State v. Mills*, 562 N.W.2d 276, 284 (Minn.1997). But this court has discretion to review "any other matter as the interests of justice may require." Minn. R.Crim. P. 28.02, subd. 11.

■ Appellant concedes that the issue was not raised below, but argues that the interests of justice require this court to address the merits of his argument. We agree. Appellant was convicted of a statutory offense, i.e., possession of a firearm by an ineligible person under Minn.Stat. §§ 609.165, subd. 1b (firearm prohibition statute), 624.712, subd. 5 (2004). Appellant challenges the applicability of the firearm prohibition statute to him on the grounds that he was not a felon for purposes of the statute. We conclude that the interests of justice require an examination of the applicability of the firearm prohibition statute to appellant.

Appellant was convicted under Minn. Stat. § 609.165, subd. 1b, which provides that "[a]ny person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, and who ships, transports, possesses, or receives a firearm, commits a felony." A "crime of violence" includes second-degree burglary. Minn.Stat. § 624.712, subd. 5.

That state argues that the Minnesota Supreme Court addressed the precise issue before us in *State v. Moon*, 463 N.W.2d 517 (Minn.1990). In that case, Moon was convicted of felony theft and placed on probation. *Id.* at 518. Upon his discharge from probation, the offense was deemed to be a misdemeanor, but the court ordered that Moon could not possess firearms. *Id.* at 518. The definition of "crime of violence" at that time included "felonious theft." Minn.Stat. § 624.712, subd. 5 (1990). Moon moved to have the language stricken from the order, arguing that he did not commit a "crime of violence" under the statute because his felony theft conviction was deemed to be a misdemeanor and misdemeanor theft was not a "crime of violence" under the statute. *Moon*, 463 N.W.2d at 519. On review, the supreme court disagreed, holding that "the definitions of the offenses listed as crimes of violence in section 624.712, subdivision 5, relate to the elements of the offense for which the defendant was originally convicted rather than the disposition subsequently imposed by the trial judge." *Id.* at 521.

■ Here, as in *Moon*, appellant was convicted of a felony that was later deemed to be a misdemeanor. The district court correctly applied the firearm prohibi-

tion statute against appellant because appellant was originally convicted of second-degree burglary, a "crime of violence" under section Minn.Stat. § 624.712, subd. 5. The subsequent stay of imposition of appellant's sentence and the later treatment of his conviction as a misdemeanor do not alter the fact that he has been convicted of a crime of violence under the statute. *Moon,* 463 N.W.2d at 520.

Appellant acknowledges that his argument was rejected by the *Moon* court, but argues that legislative amendments to the definition of "crime of violence" give cause for this court to reexamine the holding in *Moon.* In 2003, the Minnesota Legislature amended Minn.Stat. § 624.712, subd. 5.2003 Minn. Laws ch. 28, art. 3, § 7. Under the amended statute, the list of designated "crimes of violence" was recategorized. *See id.* While under the old version only some of the listed crimes were felonies, the revised list of "crimes of violence" is limited to felonies. *See id.* The previous version of the statute read, " 'Crime of violence' includes [listing offenses]"; the revised version reads, " 'Crime of violence' means: *felony convictions* of the following offenses: [providing revised list of offenses]." *Id.* (emphasis added).

Appellant argues that he did not commit a "crime of violence" under the revised statute because the addition of the language "felony convictions" limits the application of the firearm prohibition statute to felonies that are not later deemed misdemeanors by the district court. In support of his position, appellant quotes portions of the following language in *Moon:*

> A person who commits an offense which is not described with the words felony or felonious in section 624.712, subdivision 5, clearly is subject to the firearms restriction even if the conviction is deemed to be a misdemeanor pursuant to section

609.13. For instance, if a person commits fourth degree burglary, he or she is subject to the firearms restriction even if the conviction is deemed to be a misdemeanor because the definition of the offense does not include the words felony or felonious, which arguably would invoke the operation of section 609.13.

Appellant's reading of *Moon* is strained. *Moon,* in essence, held that as long as a "crime of violence" has been committed under Minn.Stat. § 624.712, subd. 5, the firearm prohibition statute applies, regardless of whether the conviction is later deemed to be a misdemeanor. *See Moon,* 463 N.W.2d at 521 (holding that "the offenses listed as crimes of violence in section 624.712, subdivision 5, relate to the elements of the offense for which the defendant was originally convicted rather than the disposition subsequently imposed by the trial judge"). Therefore, we conclude that the 2003 amendments to Minn. Stat. § 624.712, subd. 5, do not alter the supreme court's holding in *Moon* or warrant reversal of appellant's conviction.

■ But appellant argues that amended Minn.Stat. § 624.712, subd. 5, specifically excludes misdemeanor-level convictions, and thus, it would be inconsistent with the result in *Moon* for this court to hold that the firearm prohibition statute applies to him. Appellant's argument requires us to construe the statute. Statutory construction is a question of law, which this court reviews de novo. *State v. Stewart,* 624 N.W.2d 585, 588 (Minn.2001). Words and phrases must be construed according to their common meaning unless they have otherwise acquired a technical or special meaning. Minn.Stat. § 645.08(1) (2004). The purpose of all statutory interpretation is to discern the intention of the legislature. Minn.Stat. § 645.16 (2004).

We first examine the plain language of Minn.Stat. § 624.712, subd. 5. Appellant is

correct in stating that the statute excludes those who have been solely convicted of misdemeanor-level crimes. *See id.* (" 'Crime of violence' means felony convictions ..."). But the statute proscribes possession of firearms by "[a]ny person who has been convicted of a crime of violence," including a felony conviction of second-degree burglary. Minn.Stat. § 609.165, subd. 1b. Here, appellant "has been convicted" of felony second-degree burglary. *Id.* His conviction was later deemed a misdemeanor, but that does not change his underlying conviction for the purposes of the statute. *Moon,* 463 N.W.2d at 520. Thus, the plain language of the firearm prohibition statute supports its application to appellant.

■ The state argues that appellant's conviction is also consistent with the legislative intent underlying the firearm prohibition statute. We agree. As the supreme court observed, the statute is "designed to protect the public safety by keeping firearms out of the hands of convicted criminals who have committed crimes which, in the legislature's judgment, are indications of future dangerousness." *Moon,* 463 N.W.2d at 520. Nothing in the revised definition of "crime of violence" suggests a change in this policy. If the legislature intended to override *Moon,* it could have included a provision in its 2003 amendments to expressly indicate that it did not intend for those convicted of felonies which are later deemed to be misdemeanors to be prohibited from possessing firearms. In light of the supreme court's holding in *Moon,* and the plain language and purpose of the firearm prohibition statute,

we conclude that appellant was subject to prosecution under the statute.

## II.

■ Appellant contends that the district court erred in refusing to suppress the evidence of firearms found in his residence during the course of a warrantless search because the search was conducted pursuant to an invalid probationary agreement and the officers lacked reasonable suspicion to believe he was engaged in criminal activity. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999).

■ The Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution proscribe unreasonable searches by the government of "persons, houses, papers, and effects[.]" U.S. Const. amend. IV; Minn. Const. art. I, § 10. An individual has a reasonable expectation of privacy in his or her own home, and a warrantless search of a person's home is generally prohibited. *See State v. Othoudt,* 482 N.W.2d 218, 224 (Minn.1992) (noting that Minnesota courts do "not look kindly upon warrantless entries of family residences").

■ "In Minnesota, a search involving a person on probation for a criminal offense is not 'strictly governed by automatic reference to ordinary search and seizure law,' and a probationer is entitled to less privacy protection than the average citizen." *State v. Kouba,* 709 N.W.2d 299, 306 (Minn.App.2006) (citing *State v. Earnest,* 293 N.W.2d 365, 368 (Minn.1980)).[1]

---

1. In determining the validity of a search of a probationer's home, Minnesota courts have employed the balancing test used in administrative searches. *Kouba,* 709 N.W.2d at 306.

Under this test, the state's interests in integrating probationers into the community and combating recidivism are weighed against the probationer's reasonable expectation of priva-

Under this framework, "[a] consensual search is accepted as a reasonable search under the Fourth Amendment. Thus, a [warrantless] search pursuant to a valid probation agreement generally will not violate the Fourth Amendment." *Kouba*, 709 N.W.2d at 306 (citations omitted).

Under facts similar to this case, the United States Supreme Court held that the balancing of governmental and private interests of probationer "require[d] no more than reasonable suspicion to conduct a search of [a] probationer's house." *United States v. Knights*, 534 U.S. 112, 121, 122 S.Ct. 587, 592, 151 L.Ed.2d 497 (2001).[2] California law required Knights, a probationer, to "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.*, at 114, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497. Several days after Knights had been placed on probation, police suspected that he had been involved in several incidents of arson and vandalism. Based on that suspicion and pursuant to the search condition of his probation, a police officer conducted a warrantless search of Knights's apartment and found arson and drug paraphernalia. *Id.* at 115–116, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497. The Court held that the search did not violate Knights's Fourth Amendment rights because the probation was subject to a search condition as terms of his probation and the officers had "reasonable suspicion" that Knights was engaged in criminal activity.[3] *Id.* at 121, 122 S.Ct. at 593.

Here, as in *Knights*, the officers' search of appellant's home was supported by the terms of appellant's probation, which provided that "[appellant] shall when ordered by [his probation] Agent, submit to search of [his] ... residence or any other property under [his] control." And the search was ordered and conducted by appellant's probation officer. Appellant submitted to the search when informed by the officer, stating that he had "nothing to hide." Therefore, the search was conducted pursuant to the probation agreement.

■ For the first time on appeal, however, appellant argues that his probation agreement is invalid because it was not imposed pursuant to the sentencing order for his second-degree burglary offense, and thus, the district court erred in refusing to suppress the evidence seized pursuant to the agreement. Generally, this court will not consider matters not argued and considered in the court below. *State v. Mills*, 562 N.W.2d 276, 284 (Minn.1997). Here, because appellant did not raise this argument below, the state was not put on notice and did not have the opportunity to present evidence regarding the terms of appellant's probation. Thus, appellant has waived this argument.

cy. *Samson v. California*, —— U.S. ——, ——, 126 S.Ct. 2193, 2196–97, 165 L.Ed.2d 250 (2006).

2. *Knights* was very recently discussed with approval in *Samson*, —— U.S. at ——, 126 S.Ct. at 2196–97. In *Samson*, the Supreme Court held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at ——, 126 S.Ct. at 2202.

3. The Supreme Court did not address whether the terms of probation alone satisfied the reasonableness requirement of the Fourth Amendment, stating that "we need not address the constitutionality or a suspicionless search because the search in this case was supported by reasonable suspicion." *Knights* at 120 n. 6, 122 S.Ct. at 587. We therefore address both whether the search satisfied the terms of appellant's probation agreement and whether the search was supported by reasonable suspicion.

But even considering appellant's argument, it cannot be said that the probation agreement was invalid. Appellant relies on *State v. Henderson*, 527 N.W.2d 827 (Minn.1995), to argue that any conditions of probation must be imposed directly by the sentencing court and that his probation agreement is therefore invalid. In *Henderson*, the district court stayed execution of the sentence on the condition that Henderson complete probation. *Id.* at 828. While on probation, Henderson was informed by the corrections department that he would be placed in a "Special Supervision Program" (SSP) that lasted nine months and, inter alia, required three face-to-face contacts between Henderson and his probation officer per week, two urinanalyses per month, and random urinanalyses. *Id.* Henderson sought a hearing to clarify the terms of his sentence, and the district court determined that the SSP was merely a level of probation supervision, not an "intermediate sanction," and thus the corrections department had the authority to mandate appellant's participation in the program. *Id.* The Minnesota Supreme Court reversed, holding that the SSP was an "intermediate sanction" and thus the authority to impose the program rested exclusively with the court. *Id.* at 830. But the court also noted that flexibility in the implementation of conditions is desirable and stated that the district court "should not be burdened with administrative issues relating to the implementation of conditions of probation." *Id.* at 829.

■ This case is distinguishable from *Henderson*. Here, appellant agreed to and signed the terms of his probation. Appellant makes no showing that his probation agreement imposed any kind of "intermediate sanction" that would have to come directly from the sentencing court. *See* Minn.Stat. § 609.135, subd. 1(b) (2004) (defining "intermediate sanction" to include, inter alia, incarceration, home detention, or electronic monitoring). The probation agreement here required only that he remain law abiding, avoid possessing firearms or illegal narcotics, inform his probation officer before leaving the state, and submit to searches of his residence. Although the district court did not specifically order the precise terms of appellant's probation at the sentencing hearing, appellant has not shown his probation agreement is invalid. Therefore, the district court did not err by refusing to suppress the evidence seized as the result of a search authorized by the probation agreement.

■ Appellant argues that the search of his home was unreasonable because it was not supported by reasonable suspicion of criminal activity there. The quantum of evidence needed to demonstrate reasonable suspicion is not high, but police are required to make that showing when reasonableness is challenged. *Richards v. Wisconsin*, 520 U.S. 385, 394–95, 117 S.Ct. 1416, 1421–22, 137 L.Ed.2d 615 (1997). The Minnesota Supreme Court has defined reasonable suspicion as something more than an unarticulated hunch; rather, "the officer must be able to point to something that objectively supports the suspicion at issue." *State v. Wasson*, 615 N.W.2d 316, 320 (Minn.2000).

■ Here, the officers acted on more than a mere "hunch" that appellant had violated his probation agreement and was engaged in illegal activity. The district court determined that the probation officer had multiple reasonable bases for searching appellant's home based on information received by Steel and confirmed by appellant's probation officer with the Superior police indicating that appellant had violated his probation agreement by leaving the state without informing his officer, by committing the crime of disorderly conduct in

that state, and by possessing guns and illegal contraband in his home. Appellant's probation officer tried unsuccessfully to reach appellant by phone before proceeding to the residence. Under these facts, the officers had "reasonable suspicion" that appellant had engaged in criminal activity.

Appellant argues that this court may hold that the search of his home was invalid because "Minnesota appellate courts have not directly addressed whether it is lawful for a condition of probation to subject a probationer to random and indiscriminate searches of his home." But the search of his home in this case was not random or indiscriminate, and was based on specific and actionable information provided by Steel and confirmed with the Superior Police Department. Thus, appellant's argument lacks merit. Therefore, the district court did not err by not suppressing the evidence seized as a result of the search of appellant's residence.

### III.

■■■■ Appellant next contends that he was denied the right to a fair trial because the prosecutor expressed his personal opinion and vouched for the truthfulness of witnesses during closing argument. This court will reverse a conviction due to prosecutorial misconduct at trial only if the misconduct, "when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn.2003). Except in cases involving unusually serious misconduct, reversal is required only when the misconduct substantially influenced the verdict. *State v. Steward*, 645 N.W.2d 115, 121 (Minn.2002). "We look ... at the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue

prominence." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn.1993).

■■■■ Vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *State v. Gail*, 713 N.W.2d 851, 866 (Minn.2006) (quotation omitted). The prosecutor may not express a personal opinion about the truthfulness of witness testimony. *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993). "But the state may argue that particular witnesses were or were not credible." *State v. Lopez–Rios*, 669 N.W.2d 603, 614 (Minn.2003).

■■■■ Appellant argues that the prosecutor improperly injected his own opinion by prefacing four of his statements with "I would suggest to you that" or "I suggest to you that[.]" For example, the prosecutor stated, "Ladies and gentlemen of the jury, I suggest to you that Ms. Ruschmeyer was a very credible witness in this case." Appellant did not object to these statements during trial. Generally, a party waives any challenge to the alleged misconduct on appeal by failing to object or seek a cautionary instruction. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984). But an appellate court may consider a waived issue if there is (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). It is the defendant's "heavy burden" to demonstrate that the error affected his substantial rights. *Id.* at 741.

Here, the prosecutor's prefatory phrase "I suggest" is the equivalent to "I submit" or "the state submits," which Minnesota courts have held are not impermissible expressions of opinion. *State v. Bradford*, 618 N.W.2d 782, 799 (Minn.2000) (concluding that prosecutor's use of "I submit" was an interpretation of the evidence and,

therefore, not misconduct); *State v. Reed,* 398 N.W.2d 614, 617 (Minn.App.1986) (concluding that prefacing argument with "the state submits" is not an injection of personal opinion and does not constitute misconduct), *review denied* (Minn. Feb. 13, 1987). And the state was permitted to argue that particular witnesses, such as Ms. Ruschmeyer, were or were not credible. *Lopez–Rios,* 669 N.W.2d at 614. Therefore, appellant demonstrates no plain error.

 Appellant argues that the prosecutor improperly stated, without objection, that witness Amy Lane "flat out lied" to the jury when she testified that she knew that her boyfriend Tanner Anderson had stored his guns in appellant's residence. But the prosecutor did not insinuate that he knew anything the jury did not, and he did not misrepresent any testimony. Rather, the prosecutor was drawing a reasonable inference for the jury because Lane admitted on cross examination that she told the police on the day of the search that she did not know of any guns at appellant's house. *See State v. Ashby,* 567 N.W.2d 21, 28 (Minn.1997) (noting that a "prosecutor may draw reasonable inferences from the evidence produced at trial"). Thus, the statement was not plain error.

Appellant next argues that the prosecutor improperly stated, without objection, that "the lies in this case began when [appellant] accused Tanner of leaving the guns under his bed.... They continued through yesterday's testimony." But the prosecutor was merely arguing that appellant's version of the events, which were that the guns belonged to his son, Tanner, was not credible. Further, the prosecutor was anticipating appellant's argument that the guns found at the residence belonged to his son. *State v. Starkey,* 516 N.W.2d 918, 927 (Minn.1994) (not-

ing that prosecutor may call into question an anticipated defense argument). Because appellant demonstrates no plain error affecting his substantial rights, the prosecutor committed no misconduct denying appellant his right to a fair trial.

## DECISION

Appellant's conviction of felony burglary is a crime of violence mandating imposition of a firearms restriction under Minn.Stat. §§ 609.165, subd. 1b and 624.712, subd. 5 (2004). The district court did not err in refusing to suppress evidence seized as a result of the warrantless search of appellant's home because the search was conducted pursuant to a valid probation agreement and the police had reasonable suspicion to believe that appellant was engaged in criminal activity. In addition, appellant demonstrates no plain error substantially affecting his rights made by the prosecutor during closing arguments at trial. Accordingly, we affirm appellant's conviction of possession of a firearm by an ineligible person.

**Affirmed.**