*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1036**

State of Minnesota,
Respondent,

vs.

Erick Robert Gordon,
Appellant.

**Filed June 22, 2015**
**Affirmed; motion denied**
**Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-13-4899

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of felony domestic assault (harm), arguing that (1) the district court erred in admitting relationship evidence, (2) the district court

abused its discretion by denying his motion for a mistrial, (3) the prosecutor committed misconduct, and (4) the cumulative effect of these errors deprived him of a fair trial. We affirm.

**FACTS**

Appellant Erick Gordon and P.G. dated for 13 or 14 years and have two children, D.G. and E.G. Their relationship was always "rocky," and they separated in March 2013. Conflict resurfaced when they later communicated about Gordon's parenting time with the children.

On the afternoon of June 30, 2013, Gordon confronted P.G. as she was getting into her car with D.G. and E.G., then ages 11 and 3, respectively. He shouted and swore at P.G., and at the children, and punched P.G. in the head. After Gordon left, P.G. called 911; St. Paul Police Officer Jon Conney responded. P.G. told Officer Conney that Gordon had punched her three times in the face, but she declined medical assistance. Officer Conney observed that P.G. was crying and "visibly shaken." He did not see any visible injuries but told P.G. to call if any appeared.

The next day, Sergeant Mary Brodt of the St. Paul Police Department's Family Violence unit contacted P.G. for a follow-up interview. P.G. told Sergeant Brodt that Gordon had grabbed her arm and punched her, twice in the eye and twice on the right side of the head. D.G. likewise told Sergeant Brodt that Gordon had yelled at and punched P.G. in the eye three or four times. P.G. indicated that she had swelling above her eye and scratches on her arm, and Sergeant Brodt scheduled a meeting with P.G. to photograph the injuries. Sergeant Brodt also asked P.G. about the history of her

2

relationship with Gordon. P.G. reported that Gordon had assaulted her three previous times, breaking her eardrum on one occasion. P.G. stated that she was afraid Gordon would retaliate against her for reporting the June 30 incident.

P.G. did not appear for the scheduled meeting with Sergeant Brodt and refused to cooperate with subsequent phone inquiries and efforts to photograph her injuries. But P.G. remained fearful of Gordon, who regularly drove by her home and called her and sent her hostile and threatening text and Facebook messages. After about two weeks, P.G. obtained an order for protection (OFP) against Gordon.

Gordon was subsequently charged with two counts of felony domestic assault (harm and fear). While the charges were pending, despite the OFP, Gordon continued to contact P.G., telling her not to testify and threatening physical retaliation if she did.

At trial, P.G. initially testified that she could not remember the events of June 30. But when confronted with her reports to Officer Conney and Sergeant Brodt, she stated that Gordon had punched her repeatedly in the head. She explained that she was afraid to testify, and the state presented evidence of Gordon's history of assaultive and threatening conduct toward her. Gordon presented an alibi witness and argued that P.G. fabricated the incident. The jury found Gordon guilty on both counts, and the district court sentenced him to 44 months' imprisonment for domestic assault (harm).[1] Gordon appeals.

---

[1] This is an aggravated sentence based on Gordon's commission of the offense in the presence of a child.

**D E C I S I O N**

## I. The district court did not err in admitting relationship evidence.

A district court may admit evidence of "similar conduct" by a defendant against an alleged victim of domestic abuse unless the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice" to the defendant, "or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[2] Minn. Stat. § 634.20 (2012). Such relationship evidence is offered to illuminate the relationship between an accused and an alleged victim. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). To that end, relationship evidence may include conduct before or after the incident giving rise to the charged offense. *State v. Lindsey*, 755 N.W.2d 752, 756 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

On appeal, we generally review a district court's admission of relationship evidence for abuse of discretion. *Id.* at 755. But when the defendant fails to preserve the issue with a specific objection at trial, we may only review for plain error. *State v. Word*, 755 N.W.2d 776, 781-83 (Minn. App. 2008).

The state presented testimony from D.G., P.G., and Sergeant Brodt about Gordon's history of violence toward P.G. and about his threatening conduct after the June 30 incident. Gordon asserts error in the admission of both types of relationship evidence, which we address in turn.

---

[2] While the legislature has since amended the statute to refer to "domestic conduct," Minn. Stat. § 634.20 (2014), the 2012 version of the statute is the one that was in effect at the time of the June 30, 2013 offense.

4

**Objected-to Evidence of Subsequent Threats**

Gordon argues that the district court abused its discretion by admitting evidence that he threatened P.G. after the charged incident. He specifically challenges: (1) P.G.'s testimony that sometime between June 30 and July 17 Gordon said he would beat her up, and have someone else beat her up in front of their children; (2) the affidavit P.G. filed in support of her OFP petition[3]; (3) Sergeant Brodt's testimony that on July 15, P.G. told her she was afraid to follow through with the sergeant's investigation requests because Gordon had been pressuring her not to testify and she feared "physical retaliation"; (4) Sergeant Brodt's statement that on November 21, P.G. reported receiving phone calls and messages from Gordon, threatening retaliation and telling her not to testify; (5) P.G.'s testimony that Gordon told her "before Christmas" that he would "f-ck [her] up" if she testified, and that she told Sergeant Brodt she "wasn't going to show up" to testify; and (6) Sergeant Brodt's testimony that on December 15, P.G. reported Gordon's threat that he would "f-ck her up physically if she testified."

Gordon first argues that this evidence has little probative value. He contends that because P.G. ultimately testified about the assault, this case does not implicate concerns about domestic abusers "exert[ing] control over their victims, which undermines the ability of the criminal justice system to prosecute cases effectively." *See McCoy*, 682 N.W.2d at 161. We disagree. After years of violence, P.G. did not cooperate with the police investigation. After months of express threats, she initially stated that she would

---

[3] The district court admitted the affidavit but excluded the petition, which included information about the children and prior OFP proceedings.

5

not appear at Gordon's trial pursuant to the subpoena. And when she did testify, P.G. initially denied any memory of the incident, testifying to the assault only when confronted with her prior statements. Gordon took advantage of this record, arguing that P.G.'s refusal to cooperate with the investigation and her equivocal testimony indicate that she fabricated the incident. This is precisely the type of scenario in which relationship evidence is relevant.

Gordon also argues that any probative value of the subsequent threats was outweighed by the potential for unfair prejudice. We are not persuaded. While this evidence may, indeed, have painted Gordon in a poor light, it is uniquely and highly probative. First, threats of future violence are distinct from physical assaults and demonstrate a different aspect of P.G.'s relationship with Gordon. Second, Gordon challenged P.G.'s credibility both as a complainant (who exhibited no injuries and did not cooperate with police) and as a witness (who could not remember details of the alleged assault); the evidence that Gordon threatened her with violent retaliation if she testified bears particularly on the credibility of her reluctant testimony. Third, Gordon's threats demonstrate his consciousness of guilt. *See State v. Mayhorn*, 720 N.W.2d 776, 783 (Minn. 2006) (recognizing that defendant's threats against alleged victim are evidence of consciousness of guilt). On this record, we conclude the district court did not abuse its discretion by admitting evidence that Gordon threatened P.G. after—and about—the June 30 incident.

Moreover, even if the district court should have excluded or limited the subsequent-threats evidence, Gordon has not demonstrated any impairment of his

6

substantial rights from its admission. The district court repeatedly instructed the jury that evidence of Gordon's "prior conduct" serves only a limited purpose and he "is not being tried for and may not be convicted of any prior behavior other than the charged offenses." We presume the jury followed that instruction as to the proper use of the evidence. *State v. Ali*, 855 N.W.2d 235, 249-50 (Minn. 2014). Gordon contends this instruction is insufficient because it does not expressly limit the jury's consideration of post-incident conduct. We disagree. The instruction plainly distinguishes between charged conduct and uncharged conduct, and directs the jury to consider all uncharged conduct only as a basis for determining guilt as to charged conduct. And the jury's request to listen to P.G.'s 911 call during deliberations suggests that the jury focused appropriately on the June 30 incident itself. On this record, we conclude that there is no reasonable likelihood that the evidence of Gordon's post-incident threats improperly influenced the jury's verdict.

**Unobjected-to Evidence of Prior Violence**

Gordon also argues that the district court plainly erred by admitting Sergeant Brodt's testimony about Gordon's prior violent conduct toward P.G. The state urges us to deem the argument waived because Gordon did not assert it at trial and moved to strike Gordon's plain-error argument from his reply brief because it was only addressed in a perfunctory way in his principal brief. We agree that failure to present an argument to the district court generally results in this court declining to consider the issues on appeal. *State v. Anderson*, 720 N.W.2d 854, 862 (Minn. App. 2006), *aff'd*, 733 N.W.2d 128 (Minn. 2007). But we always retain the discretion to consider, in the interests of justice,

7

whether plain error impaired the defendant's substantial rights. Minn. R. Crim. P. 31.02; Minn. R. Civ. App. P. 103.04; *see also State v. Kelley*, 855 N.W.2d 269, 278-79 (Minn. 2014). And while the plain-error argument in Gordon's principal brief is thin, neither we nor the state was left to speculate as to the nature of Gordon's argument. Accordingly, we deny the state's motion and review Gordon's evidentiary challenge for plain error.

The defendant bears the burden of demonstrating prejudicial plain error. *State v. Evans*, 756 N.W.2d 854, 867 (Minn. 2008). Gordon has not carried this "heavy burden" for two reasons. *See Word*, 755 N.W.2d at 782. First, he does not explain how it was plain error for the district court to admit Sergeant Brodt's testimony about his prior violent conduct when he had expressly advised the court that he did not object to that evidence. Second, we are not persuaded Sergeant Brodt's testimony that Gordon's prior conduct indicates a "pattern of behavior" is improper propensity evidence. The testimony accurately describes the reality of domestic violence and the reason why relationship-evidence is admissible. *See McCoy*, 682 N.W.2d at 161 (explaining that relationship evidence merits unique treatment in part because domestic abuse "frequently involves a pattern of activity"). And the district court mitigated any likelihood that the jury would view the testimony as propensity evidence by doing precisely what Gordon asserts it was required to do: "make sure the jury understood how it could use relationship evidence during its deliberations." On this record, Gordon's plain-error challenge fails.

8

**II. The district court did not abuse its discretion by denying Gordon's motion for a mistrial.**

A mistrial should be granted only if there is a reasonable probability that the outcome of the trial would have been different had the incident resulting in the motion not occurred. *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). We review the denial of a motion for a mistrial for abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003). We consider the entirety of the trial, including the mitigating effects of a curative instruction, when determining whether inadmissible evidence affected the outcome of the trial. *See Manthey*, 711 N.W.2d at 506-07.

When asked whether she and Gordon had "periods of separation" over the years, P.G. responded, "Only when he went to prison." Gordon objected and moved for a mistrial. The district court denied the motion, reasoning that the state did not intentionally elicit the improper testimony, but instructed the jury to disregard the testimony. And the court reminded the jury in its final instructions "to disregard all evidence and any testimony I have ordered stricken or have told you to disregard."

References to a defendant's prior incarceration are generally inadmissible as unfairly prejudicial. *Id.* at 506. But the erroneous admission of such evidence generally does not warrant a new trial when it is "of a passing nature." *State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992) (quotation omitted). The reference to Gordon's prior imprisonment was brief, and we presume that the jury followed the instructions to disregard it. *State v. Bauer*, 776 N.W.2d 462, 472 (Minn. App. 2009), *aff'd*, 792 N.W.2d

9

825 (Minn. 2011). We conclude that the district court did not abuse its discretion by denying Gordon's motion for a mistrial.

### III.    The prosecutor did not commit misconduct.

We may review unobjected-to prosecutorial conduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The defendant must first establish that the prosecutor committed error that is plain. *Id.* If he does so, the burden shifts to the state to demonstrate that the misconduct did not affect the appellant's substantial rights. *Id.* Even where misconduct occurs, we will reverse only when the appellant was denied a fair trial. *State v. Porter*, 526 N.W.2d 359, 365 (Minn. 1995).

#### Vouching

A prosecutor may not vouch for a witness's credibility by implying a guarantee of the witness's truthfulness or expressing a personal opinion as to the witness's credibility. *State v. Patterson*, 577 N.W.2d 494, 497 (Minn. 1998). But a prosecutor may argue that a witness was or was not credible. *State v. Martin*, 773 N.W.2d 89, 106 (Minn. 2009). To determine whether a prosecutor's statement constitutes improper vouching, we consider the closing argument as a whole. *State v. Smith*, 825 N.W.2d 131, 139 (Minn. App. 2012).

Gordon argues that the prosecutor vouched for D.G.'s credibility during rebuttal by arguing that D.G. was "telling you the truth." Such statements may appear to vouch for a witness's credibility. *See State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006) (stating that arguments that witness was "very believable" appear to vouch for witness's credibility). But when they are part of a "discussion of factors affecting the credibility of

10

the witnesses, and based on that context," then the arguments are within proper bounds. *Id.* That is the case here.

The prosecutor focused her rebuttal on countering Gordon's argument that P.G. was lying about the June 30 incident and that D.G. "has all the motive and bias in the world to back her up on the story." The prosecutor argued that this is not a plausible interpretation of D.G.'s testimony and pointed to numerous specific factors that show D.G. was being truthful. The prosecutor also reiterated that it was for the jury to determine credibility and that it was the state's burden to prove all of the elements of the charged offenses beyond a reasonable doubt. We conclude that the prosecutor's rebuttal argument was, as a whole, within proper bounds.

**Inadmissible Other-Crimes Testimony**

"It is improper for a prosecutor to intentionally elicit inadmissible and highly prejudicial testimony." *State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006). Evidence of a defendant's prior crimes or bad acts is inadmissible except for limited purposes and upon proper notice and proof. Minn. R. Evid. 404(b); *State v. Ness*, 707 N.W.2d 676, 685-86 (Minn. 2006).

Gordon argues that the prosecutor improperly elicited inadmissible testimony that he threw rocks at P.G.'s car and used marijuana. We disagree. The evidence that Gordon threw rocks at P.G.'s car in the days leading up to June 30 (and similar unchallenged evidence) establishes the context for the charged offenses. *See State v. Loving*, 775 N.W.2d 872, 880 (Minn. 2009) (stating that evidence of past threats against victim is probative of context and intent for charged assault). And while Sergeant Brodt's

11

testimony that Gordon used marijuana was undisputedly improper, we discern no reversible error. The prosecutor plainly did not intend to elicit, and could not reasonably have anticipated, the brief reference, which came at the end of an increasingly unresponsive narrative. On this record, we conclude that Gordon has not satisfied his burden of showing prosecutorial error, plain or otherwise.

## IV. Gordon received a fair trial.

Gordon urges that the district court's collective errors deprived him of a fair trial. "An appellant is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial." *State v. Yang*, 774 N.W.2d 539, 560 (Minn. 2009) (quotation omitted). But, as noted above, Gordon has not demonstrated prejudicial error at any stage of his trial. Accordingly, we conclude he is not entitled to relief based on cumulative error.

**Affirmed; motion denied.**